IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRANDON HAYS                                                              PLAINTIFF

v.                              No. 3:17-cv-325-DPM

BLACKPOWDER PRODUCTS, INC.
and John Does 1-2                                                        DEFENDANTS

OPINION AND ORDER

**1.** As Hays was sighting the scope on his .50 caliber muzzleloader in his rural backyard, the rifle's barrel exploded, badly injuring Hays's left hand. He had bought the muzzleloader from his boss a few weeks before. At that point, Hays described it as "Oh, brand new. It was immaculate." № 23-1 at 12. His boss had fired it only a few times. On two occasions, Hays shot the muzzleloader a couple of times without incident, cleaning it after each use. On the day of the accident, Hays shot the rifle twice, cleaned it, then put it aside to work on a plumbing project with his fiancé's brother, Nathan West, in the house Hays was building on the property.

Hays and West did the project, then Hays decided to go back to shooting. He wanted to continue sighting the scope in and show West how to fire the muzzleloader. West was curious, never having been around one. Just as his grandfather had taught Hays how to load and

fire a muzzleloader when Hays was a boy, Hays wanted to demonstrate good gun handling to West and then let him fire the rifle.

West paced the distance and set up a cardboard target, as Hays directed. Hays loaded and pulled the trigger. The primer—a percussion cap—popped, but the muzzleloader did not fire. West saw some smoke. This kind of misfire, as Hays would later say, is not unusual. Hays's fiancé, who was working in the partly built house nearby, made a joke at this point, asking Hays whether he needed to reload or just put a new primer in. Hays said, and she confirmed, that he just replaced the primer. He took aim, fired, and the muzzleloader's barrel exploded. These are the material facts about Hays's accident, taken in his favor where genuinely disputed, as some are. *Lindholm v. BMW of North America, LLC*, 862 F.3d 648, 651 (8th Cir. 2017).

Hays's theory against the muzzleloader's manufacturer, BPI, is that the steel in the barrel had a manufacturing defect, which caused the explosion. Hays says he loaded and handled the rifle correctly. On deposition, BPI's former president testified that, if Hays had done exactly what he said, Hays did nothing to cause the accident. Hays pleads strict liability and negligent manufacturing, both rooted in the allegedly defective barrel steel. BPI responds that Hays did something to cause the explosion: either he reloaded the muzzleloader after the cap misfired, perhaps distracted by West, or used an oversized patch, or hadn't adequately rammed down the load, leaving an air pocket

-2-

between the powder and the ball. One of the genuine factual disputes is that West has testified that Hays reloaded the rifle after the misfire. BPI leans on this testimony, while Hays emphasizes West's acknowledged inexperience with muzzleloaders as well as his bipolar, schizophrenia, and psychosis diagnoses. Each side has an expert. BPI seeks to strike a belated affidavit from Hays's expert, Dr. Stephen Batzer, exclude his foundational testimony, and get summary judgment. Hays responds that all (or at least some) of the expert's affidavit is fine, his testimony should come in, and a trial is needed. The Court must first settle the record, and then decide whether jury issues exist about defect.

**2.** Dr. Batzer's affidavit is too much, too late. He prepared a comprehensive and timely report, a rebuttal report, with a follow-up email, and sat for two depositions. BPI's expert likewise prepared more than one report and gave a deposition. There were some last-minute hurdles for both experts' work, because the muzzleloader's elusive ramrod finally turned up and had to be examined. But, counsel cooperated, the experts sprinted, and the parties met the Scheduling Order's deadlines. Those deadlines passed, and the parties jointly advised the Court that all expert discovery was complete and the case was on track. *№ 21.* BPI filed its motion for summary judgment and a *Daubert* motion challenging Dr. Batzer's opinions. Then came the affidavit, supporting Hays's opposition to the potentially dispositive

motions. Dr. Batzer's affidavit is thirty pages long, with sixty or so more pages of exhibits, which include materials old and new. The affidavit mostly responds to Dr. Eric Guyer's (BPI's expert) opinions: that Hays probably made a loading error, either a double load or an air gap. In his affidavit, Dr. Batzer recounted the results of new tests he had conducted about the double load, considered test results from other cases involving similar guns and air gaps, discussed additional literature and videos reviewed, and revised his original opinion about Hays being alone.

Hays acknowledges this new work's tardiness but says the delay was substantially justified, harmless, or both within the meaning of Rule of Civil Procedure 37(c)(1). The Court disagrees. The ramrod's belated discovery did delay Dr. Guyer's report until mid-April, and his deposition until late April. And at that deposition, Dr. Guyer homed in on a "short start," caused by an air gap, as the most likely loading error. But, in the fall of last year, BPI had disclosed its intention to offer expert testimony about loading errors, including multiple projectiles, an air gap, or both. And BPI's former president testified to the same effect at his deposition around the same time. Dr. Guyer's mid-April report highlighted both issues, and he came down on the air gap in late April at his deposition. These potential causes, as Dr. Batzer confirmed, are easily testable. He did not do so until after getting BPI's potentially dispositive motions. Hays highlights that Dr. Batzer had only one day

-4-

in early May to complete his rebuttal report after getting the transcript of Dr. Guyer's deposition. This no doubt created a bind. But Hays did not seek an extension to do any more tests, and Dr. Batzer testified in mid-May that he neither planned nor needed any more testing to support his opinions. Hays is correct: an expert doesn't have to stand mute on rebuttal. *E.g., Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 20–22 (1st Cir. 1994). But he can't speak new volumes at that point, either. The delayed testing and disclosures were not substantially justified.

And they were prejudicial to BPI. Filing dispositive motions is a watershed. As precedent recognizes, allowing new record material thereafter on critical issues is often unfair. It can give the non-moving party the opportunity to fill holes and correct mistakes with the guiding benefit of the moving party's entire argument. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008); *Williams v. TESCO Services, Inc.*, 719 F.3d 968, 976 (8th Cir. 2013); *see also Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 433 (8th Cir. 2019). Dr. Batzer's new tests, consideration of others' air-gap testing, and expanded literature review, were not harmless. They were not merely explanatory or marginal supplements. They were significant. The Court also declines Hays's request to cull. Dr. Batzer's belated affidavit is a tightly woven document, an argument largely addressed to BPI's motion briefing,

which would be hard to unweave. The Court will not consider the affidavit.

**3.** The next issue is the admissibility of Dr. Batzer's foundational opinions. Rule of Evidence 702 and *Daubert* govern. Judge Holmes ably summarized this law in *Schipp v. General Motors Corporation*, 443 F. Supp. 2d 1023, 1027–28 (E.D. Ark. 2006).

BPI reserves any challenge to Dr. Batzer's expertise. His credentials are solid — a Ph.D. in mechanical engineering, a Michigan-issued professional engineer's license, board certification as a forensic engineer, a fellow of the National Academy of Forensic Engineers, twenty years of experience in the U.S. Army's Ordinance Corps, and lots of experience as a range safety officer in black powder cartridge competitions. Dr. Batzer is qualified.

*Daubert* review is about the expert's methods, not his conclusions. Is the opinion sufficiently reliable to be helpful to the jury? Both experts agree on the possible causes of this accident. To boil it down, Dr. Guyer concludes that Hays made a mistake, either loading the rifle twice or leaving an air gap that caused a short start, while Dr. Batzer concludes that there was a defect in the barrel's steel — "a hidden metallurgical flaw" — which initiated a crack and catastrophic barrel failure. № 33 at 4.

BPI has no quarrel with Dr. Batzer's general method — akin to a differential diagnosis — of ruling out possible causes to arrive at the

most likely one. BPI makes two main attacks, though, on the specifics of Dr. Batzer's work. The company first says that Dr. Batzer made a critical factual mistake, which undermines his conclusion that Hays probably made no loading error. Dr. Batzer said, initially, that Hays was alone, and so ruled out distraction. Of course Hays wasn't alone; he was demonstrating to West how to shoot the muzzleloader, teaching him. This is an important fact. Dr. Batzer got it wrong. But the mistake is not fatal to this expert's opinion. A teacher can be distracted or focused by a student. Discerning what probably happened is what juries do best. A jury can discount or credit Dr. Batzer's conclusions accordingly. In *Daubert* terms, this mistake is not a methodological flaw that renders Dr. Batzer's opinions wholly unreliable or inadmissible. *Shuck v. CNH America, LLC*, 498 F.3d 868, 874–75 (8th Cir. 2007).

Putting aside some scuffling about nomenclature, BPI's other main point is that Dr. Batzer could — easily and conclusively — have tested his opinion that the barrel steel in this muzzleloader had some material defect with various destructive metallurgical tests. He didn't. Therefore, BPI continues, his testimony should be excluded. This is a powerful argument. The opinions of two experts in *Schipp* did not survive a similar challenge. 443 F. Supp. 2d at 1029–31.

Hays responds that Dr. Batzer didn't do destructive testing because there was reliable evidence from non-destructive tests and other sources on which Dr. Batzer could base a solid opinion.

№ 33 at 11.  Hays points to Dr. Batzer's initial testing methods, Dr. Batzer's reviewing of Dr. Guyer's report and deposition, Dr. Batzer's retesting based on Dr. Guyer's report and deposition, and Dr. Batzer's second report and deposition. № 33 at 3–6.  Both Dr. Batzer and Dr. Guyer used industry-accepted methods in this case, with some differences at the margin, but neither of them did destructive testing, unlike in *Schipp*. № 33 at 11.  That factual difference is crucial.  Instead of pointing to best-practices or industry standards, BPI emphasizes that Dr. Batzer's critical error was not doing destructive testing.  Yet the company is silent about its own expert's lack of destructive testing. № 33 at 11.

The *Daubert* standard is flexible, rooted in the particular facts of the case. *Jaurequi v. Carter Manufacturing Company, Inc.*, 173 F.3d 1076, 1083 (8th Cir. 1999).  The facts that BPI's expert did no destructive testing either, and that BPI points to no industry standard requiring destructive testing, are important.  The lack of a more probing metallurgical analysis here goes to the weight of each expert's testimony, not its admissibility.  *Shuck*, 498 F.3d at 874–75.  And how to weigh their testimony is for the jury to decide.  Dr. Batzer's foundational opinion is admissible under *Daubert*.

  **4.** Now the merits issue:  Has Hays created a jury question on defect, the core of both his claims?  This Court covered the familiar Arkansas law on point in a recent case: product liability claims usually

need an expert's backing. *Oliphant v. FCA US LLC*, No. 3:18-cv-33-DPM, № 42 at 3–4. Hays has some, and the liability question is close. But taking the record in the non-movant's favor, everything could add up: Hays getting the "immaculate" muzzleloader from his boss, who had fired it only a few times, *№ 23-1 at 12 & № 33 at 2*; Hays's care of the rifle, *№ 23-1 at 12*; Hays's testimony that he did everything correctly in loading the rifle, *№ 23-1 at 13*; and BPI's former president acknowledging that, if Hays did everything as he said, then the barrel should not have exploded, *№ 34 at 11*. All this—accepted as the truth, in combination, and with inferences taken in Hays's favor—is sufficient to support a conclusion that the barrel had a manufacturing defect. The jury must decide what happened.

**5.** The Court notes the Doe defendants. The time to name them by amended pleading has passed. The Court will therefore dismiss them without prejudice unless a party objects by 14 February 2020.

\* \* \*

Motion to strike, № 39, granted. Motion to exclude Plaintiff's expert, № 25, denied with instructions. Dr. Batzer is limited to his pre-affidavit opinions. Motion for summary judgment, № 22, denied without prejudice. An Amended Scheduling Order with a trial date and pretrial deadlines will issue.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

27 January 2020